UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————
)
JOSEPH A. GUZAJ,                              )
)
            Plaintiff,                        )
)
v.                                            )        Civil Action No. 13-12965-LTS
)
WOODS HOLE, MARTHA'S                          )
VINEYARD AND NANTUCKET                        )
STEAMSHIP AUTHORITY and                       )
M/V MARTHA'S VINEYARD,                        )
)
            Defendants.                       )
———————————————————)


ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

July 10, 2015

SOROKIN, J.

        This action is before the Court on Plaintiff Joseph Guzaj's Motion for Partial Summary

Judgment.  By this Motion, Guzaj and Defendants Woods Hole, Martha's Vineyard and

Nantucket Steamship Authority ("Steamship Authority") and the M/V Martha's Vineyard

(collectively, "Defendants") seek resolution of the limited issue of whether the winch and cable

system that is alleged to have injured Guzaj was an appurtenance of the vessel on which he was

employed at the time of the injury.  If the winch and cable system was an appurtenance, Guzaj

may proceed with his claim for unseaworthiness under general maritime law; if not, that claim

fails.  For the reasons set forth below, the Court finds the winch and cable system to have been

an appurtenance of the vessel at the time of the injury and, accordingly, the Motion for Partial

Summary Judgment is ALLOWED.

I.    FACTS[1]

Guzaj has been employed by the Steamship Authority for over twenty years.  Doc. No. 53 at 2.  In September 2012, Guzaj was working as a seaman aboard the M/V Martha's Vineyard.  Id.  The M/V Martha's Vineyard is a ferry that carries passengers, cars, and trucks between Woods Hole on Cape Cod and Vineyard Haven on Martha's Vineyard, among other places.  Id. at 3; Doc. No. 45 ¶ 1.

When arriving in a port, the M/V Martha's Vineyard uses a "transfer bridge," a shore-based piece of equipment, to load and unload cars and trucks from the vessel.  Doc. No. 45 ¶ 3.  Passengers not driving motor vehicles do not use the transfer bridge, but board and disembark the vessel by means of a separate ramp.  Doc. No. 53 at 3.  The transfer bridge, which is approximately ten feet wide and is raised and lowered by a hydraulic winch, is a metal structure that extends from land to the vessel and provides a surface on which cars and trucks are driven off the vessel.  Id. at 8; Doc. No. 45 ¶ 6.  When loading or unloading, the vessel is secured to the transfer bridge by way of two manual winches mounted on either side of the transfer bridge.  Doc. No. 45 ¶ 6.  Each winch is connected to a cable, which passes from the winch through a "turning block" below the level of the transfer bridge and ends in a ring.  Id.; Doc. No. 53 at 3-4.  When the vessel arrives in a port, the winches are let out by a shore-based employee of the Steamship Authority, and a crewmember of the vessel takes the ring and secures it on a cleat on the vessel.  Doc. No. 45 ¶ 6; Doc. No. 53 at 3.  The cable is then, presumably, tightened by the shore-based employee operating the winch, securing the vessel to the transfer bridge.  When the

---

[1] The parties submitted a set of stipulated facts to govern the resolution of the Motion.  Doc. No. 45.  In addition, in their Opposition to the Motion, Defendants provided additional facts taken from the deposition of Guzaj.  Doc. No. 53 at 2-8.  As the non-moving party, Defendants are entitled to have the evidence viewed in the light most favorable to them and to have all reasonable inferences drawn in their favor.  Accordingly, the Court has considered their proffered facts, although it concludes that the additional facts do not affect the outcome of the Motion.

vessel is leaving a port, the shore-based employee lets out the winch to slacken the cable and the crewmember of the vessel releases the ring from the cleat and hangs the ring on a hook on the transfer bridge.  Doc. No. 53 at 4.

Guzaj alleges that he injured his back in two incidents that occurred when he was a crewmember responsible for securing and releasing the ring on the M/V Martha's Vineyard. Specifically, in each instance, it is alleged that he pulled on the cable to create enough slack to release the ring from the cleat.[2]  The cable paid out of the winch for some distance, but then suddenly stopped or "fetched up."  Doc. No. 45 ¶ 7; Doc. No. 53 at 5, 7.  Guzaj claims that the sudden resistance in the cable occurring while he was pulling on it resulted in an injury to his back.  Doc. No. 45 ¶ 7; Doc. No. 53 at 5-8.  Guzaj further alleges that the cable fetched up due to the winch, cable, or turning block being maintained in an unseaworthy condition.  Doc. No. 44 at 4 n.4.  Both parties agree that Guzaj was on the vessel at both times he claims to have been injured.  Doc. No. 53 at 4, 7; Doc. No. 57 at 5.

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once a party "has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'"  Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  The Court is "obliged to []view the record in the light most

---

[2] It appears that the parties differ on whether the injury occurred when the boat was arriving in a port and Guzaj was pulling on the cable to secure the ring on the cleat, or whether it occurred when the boat was departing a port and Guzaj was attempting to release the hook from the cleat.  Doc. No. 45 ¶ 7; Doc. No. 53 at 6-7.  For Defendants' benefit, the Court assumes the latter.

favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving

party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).  Even so, the

Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation."

Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina–Muñoz v. R.J. Reynolds

Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  A court may enter summary judgment "against a

party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986).

III.   DISCUSSION

This Motion is limited to the narrow question of whether the winch and cable system[3] is

an appurtenance of the vessel such that the warranty of seaworthiness extends to it.  As a matter

of general maritime law, shipowners have an "absolute duty . . . to furnish a 'seaworthy' ship and

compensate seamen for injuries caused by any defect in a vessel or its appurtenant appliances or

equipment." Napier v. F/V DEESIE, Inc., 454 F.3d 61, 67-68 (1st Cir. 2006).  As the above

statement suggests, the warranty of seaworthiness extends beyond the vessel itself and the

equipment that travels with it to include other equipment considered to be equipment appurtenant

to the vessel. Romero Reyes v. Marine Enters., Inc., 494 F.2d 866, 869 (1st Cir. 1974);

---

[3] The parties appear to dispute whether the appurtenance inquiry in this case should focus on the winch as
a component of the transfer bridge or on the winch and cable system as a piece of equipment separate and
distinct from the transfer bridge.  The Court discerns no import in this distinction.  Both the transfer
bridge and the winch system serve equivalent functions—facilitating the loading and unloading of cars
and trucks by creating and maintaining a point of contact with the shore.  Further, both the transfer bridge
and the winch and cable system maintain independent points of connection to the vessel.  For the
purposes of this inquiry, the Court concludes that whether the winch is considered a component of the
transfer bridge or an independent piece of equipment is immaterial to resolving the present Motion.  For
Defendants' benefit, however, the Court conducts it analysis considering the winch and cable system as a
separate piece of equipment.

O'Donnell v. Jean McCausland, LLC, No. 04-CV-175-PB, 2005 WL 3133034, at *2 (D.N.H. Nov. 17, 2005).

Guzaj argues that the winch and cable system is "equipment appurtenant" to the vessel because the winch and cable system is vital to the vessel's mission and the winch and cable were connected to the ship when his injury occurred. Defendants counter that the winch was not an appurtenance of the ship because the winch was not "firmly and physically attached to the vessel" and was not "under the control of vessel personnel." Doc. No. 53 at 12.

Recently, a court in the District of New Hampshire addressing this issue noted, after reviewing the relevant caselaw, that the "most important factors" in determining whether equipment is appurtenant to a vessel are "whether the equipment is vital to the ship's mission and whether it is on or physically connected to the ship when the seaman is injured." O'Donnell, 2005 WL 3133034, at *2. The Supreme Court, in considering the distinct but related question of the reach of federal maritime jurisdiction set out four "typical elements of a maritime cause of action": 1) whether the injury occurred by equipment that was part of the vessel's usual gear or was stored on board, 2) whether the equipment that injured the seaman was attached to the vessel, 3) whether the equipment that injured the seaman was under the control of the vessel or its crew, and 4) whether the accident occurred on the vessel or the gangplank. Victory Carriers, Inc. v. Law, 404 U.S. 202, 213-14 (1971).

In Drachenberg v. Canal Barge Co., the Fifth Circuit applied those elements to determine whether a shore-based "marine unloading arm" was an appurtenance of a barge. 571 F.2d 912, 919-21 (5th Cir. 1978). The marine unloading arm was permanently attached to the dock, but was bolted to the barge at the time of the incident and was used to carry molten sulfur, the barge's cargo, from the hold of the barge to storage tanks on the shore. Drachenberg v. Canal

Barge Co., 571 F.2d 912, 913-14 (5th Cir. 1978).  In that case, the Fifth Circuit held the marine

unloading arm to be an appurtenance of the vessel, relying on the facts that the arm was "firmly

and physically attached to the vessel," and constituted "a critical component integrally related to

the vessel's function," as well as the fact that the injury "occurred on board the vessel."  Id. at

920-21.  The court specifically noted this last consideration—the occurrence of the injury on

board the vessel—as "highly significant."  Id. at 921.

Considering the stipulated facts in this case in light of this caselaw, the Court concludes

that the winch and cable system is an appurtenance of the vessel.  The parties agree that the

winch and cable system "secures the vessel to the transfer bridge in order to facilitate the loading

and unloading of motor vehicles."  Doc. No. 45 ¶ 6.  Further, it is not disputed that Guzaj was

onboard the vessel when he was injured.  Doc. No. 53 at 3, 7.  Importantly, Guzaj was in the

process of releasing the cable from the vessel when he was injured.  Doc. No. 53 at 6-7.  Thus,

Guzaj has established that both of the "most important factors" considered by Judge Barbadoro

in O'Donnell—the equipment being central to the vessel's mission and physical connection of

the equipment to the vessel at the time of injury—militate toward finding the winch and cable

system to be an appurtenance of the vessel.  O'Donnell, 2005 WL 3133034, at *2.  What is more,

two of the considerations set out by the Supreme Court in Victory Carriers, the attachment of the

equipment to the ship and the injury occurring on board of the vessel, are present here.  In many

ways, the facts here present a very similar case to the equipment found to be appurtenant in

Drachenberg, where the injury occurred on board the vessel by shore-based equipment that was

attached to the vessel at the time of the injury.  In light of the foregoing, the Court finds that the

winch and cable system was an appurtenance of the M/V Martha's Vineyard at the time of

Guzaj's injury.

Defendants' arguments for the opposite conclusion are unavailing.  Notwithstanding Defendants' assertions to the contrary, finding the equipment in question to be both firmly and physically attached to the vessel and under the control of vessel personnel[4] is not a prerequisite to finding the equipment to be an appurtenance of the vessel.  Rather, courts have found those circumstances to bear on, but not be dispositive of, the appurtenance inquiry.  See Scott v. Trump Indiana, Inc., 337 F.3d 939, 944 (7th Cir. 2003) (considering whether the equipment causing injury was under the control of employees of the shipowner as a consideration among other factors in determining whether the equipment was an appurtenance); Drachenberg, 571 F.2d at 921 (describing firm and physical attachment to the vessel as "satisfying a typical element of a maritime cause of action.").  In fact, in Drachenberg, the marine unloading arm was held to be an appurtenance of the vessel despite the fact that it was not owned or operated by the shipowner. 571 F.2d at 913, 915.

In addition, Defendants cite a case for the proposition that the "temporary affixing of steadying wires" creates an insufficient connection to the vessel to establish equipment as an appurtenance.  That case is inapposite to the facts presented here.  In Davis v. W. Bruns & Co., the case cited for that principle, the injury occurred on the dock, caused by equipment that was permanently affixed to the shore and whose only connection to the vessel was two guy wires. 476 F.2d 246, 248 (5th Cir. 1973).  That circumstance is entirely distinct from the facts presented by this case, where the injury occurred on the vessel, and the point of connection to the ship—the cable—itself caused the injury to Guzaj.

---

[4] Whether there is significance to the undisputed fact that the winch was operated by an employee of the shipowner, but not a member of the vessel's crew, is a question upon which the Court takes no view.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, Guzaj's Motion for Partial Summary Judgment, Doc. No. 44, is ALLOWED.  The Court notes that this Order only resolves the question of whether the winch and cable system is equipment appurtenant to the vessel.  The questions of whether that equipment was, in fact, unseaworthy and whether the injury to Guzaj was proximately caused by such an unseaworthy condition, remain to be determined at trial.  The Court will hold an initial pretrial conference on July 28, 2015 at 2:30 p.m.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge